580 P.2d 973

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Tonie MONTOYA, Defendant-Appellant.**

**No. 3403.**

Court of Appeals of New Mexico.

May 16, 1978.

Writ of Certiorari Denied June 14, 1978.

John B. Bigelow, Chief Public Defender, Reginald J. Storment, Appellate Defender, Martha Daly, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

· Defendant appeals his conviction of criminal sexual penetration in the second degree. We discuss: (1) application of § 40A–9–26, N.M.S.A. 1953 (2d Repl. Vol. 6, Supp.

1975); (2) compulsory process; and (3) summarily answer other issues.

*Application of § 40A–9–26, supra*

Section 40A–9–26(A), supra, limits the admissibility of evidence of the victim's past sexual conduct. Section 40A–9–26(B), supra, sets forth the procedure for determining the admissibility of such evidence.

Defendant is the brother of the victim's husband. One day prior to trial, defendant filed a motion to be allowed to offer evidence that the victim had engaged in sexual intercourse with her husband within 24 hours of the rape. This motion was denied. There is no issue concerning the denial of this motion; evidence to this effect was admitted at trial.

During cross-examination of the victim, defendant asked: "Have you ever had intercourse against your will at any other time?" The prosecutor objected, the question was not answered. During argument outside the presence of the jury, defendant asserted that one of the victim's children resulted from a prior rape. Defendant contended the question was admissible because the defense was that the victim's testimony was a fabrication based on the victim's prior rape experience. The trial court excluded the above-quoted question and other questions concerning the prior rape.

This issue does not involve a question of relevancy; the trial court did not reach that question. See *State v. Herrera,* 91 N.M. —, —— P.2d —— (Ct.App.), decided April 25, 1978. The trial court ruled that the proposed questioning was in violation of § 40A–9–26(B), supra, in that no written motion had been filed before trial.

■ Section 40A–9–26(B), supra, provides that a written motion is to be filed, heard and decided prior to trial. "If new information, which the defendant proposes to offer under subsection A of this section, is discovered prior to or during the trial, the judge shall order an in camera hearing to determine whether the proposed evidence is admissible". On appeal, defendant asserts that inasmuch as a pretrial motion had been

filed concerning the victim's intercourse with her husband, it can be logically inferred that the prior rape was "new information". No such claim was raised in the trial court; the "new information" claim will not be considered because raised for the first time on appeal. N.M.Crim.App. 308.

■ The trial court excluded the questioning because of noncompliance with the requirement of a pretrial motion. It could properly exclude the questioning on that ground. *State v. Palmer,* 89 N.M. 329, 552 P.2d 231 (Ct.App.1976); *State v. Helker,* 88 N.M. 650, 545 P.2d 1028 (Ct.App.1975), cert. denied, 429 U.S. 836, 97 S.Ct. 103, 50 L.Ed.2d 102 (1976); see *State v. Smith,* 88 N.M. 541, 543 P.2d 834 (Ct.App.1975).

■ Defendant's claim in the trial court was that § 40A–9–26, supra, did not apply to questions concerning a prior rape. The argument was that "past sexual conduct" in § 40A–9–26(A), supra, means only consensual sex acts. We disagree. For the prior rape to have resulted in the birth of a child, there must have been sexual intercourse. Sexual intercourse is sexual conduct whether by consent or force. Section 40A–9–26(A), supra, is not limited to sex by consent; rather, by its unlimited wording, it applies to all forms of past sexual conduct. The trial court correctly ruled that the prior rape was past sexual conduct within the meaning of § 40A–9–26(A), supra.

*Compulsory Process*

■ A witness, who allegedly would support defendant's alibi defense, was subpoenaed, but did not appear pursuant to the subpoena. During the trial, defendant moved that a bench warrant be issued to require the attendance of the witness. The trial court refused to issue the bench warrant. Defendant contends this ruling was error in that it violated his constitutional right "to have compulsory process to compel the attendance of necessary witnesses in his behalf". N.M.Const., Art. II, § 14; see *State v. Cooley,* 19 N.M. 91, 140 P. 1111, 52 L.R.A.,N.S.; 230 (1914).

This contention ignores the trial proceedings. The tapes show that the absent witness was an 80-year-old woman suffering from severe hypertension and anxiety. Four days prior to trial, the husband and son of the woman contacted the trial court and showed the judge a note from a physician stating the woman should not appear as a witness. The trial court stated that it had promptly referred the husband and son, together with the physician's note, to defense counsel. With information that the woman should not appear as a witness, defense counsel neither sought a continuance nor sought to take the woman's deposition. The tapes indicate defense counsel took no action on the pretrial information; rather, counsel waited until the trial was in progress and sought the issuance of the bench warrant.

*State v. Schaffer,* 70 Wash.2d 124, 422 P.2d 285 (1966) states:

[C]ompulsory process in criminal cases involves such disparate elements as surprise, diligence, materiality, and maintenance of orderly procedures; and this court leaves the decision largely to the discretion of the trial court . . . ·

Defendant was not surprised by the absence of the subpoenaed witness, having been informed four days prior to trial that, because of her illness, the witness should not appear. Having received this information, defendant took no pretrial action and thus was not diligent. In light of these facts, the trial court's refusal to issue the bench warrant was consistent with the maintenance of orderly procedures. There was no abuse of discretion and no violation of the right to compulsory process by the trial court's refusal to issue the bench warrant.

## Issues Answered Summarily

### (a) Chain of Custody

■ An exhibit, called a rape kit and identified as containing specimens taken from the victim by a physician at a hospital, was admitted into evidence over defendant's objections.

Defendant's first claim relies on evidence that the physician left the examining room several times while "the specimens remained in the room" and that the physician collected specimens in other rapes cases "on the night" that she examined the victim in this case. This claim misstates the evidence. The physician testified to having examined four victims "that day" but that no one else was examined at the time the victim in this case was examined. Defendant recognizes "there is no evidence . . to suggest the specimens were confused or in some other way tampered with".

After the specimens were placed in the rape kit and sealed, the sealed container was taken to and placed in an "evidence drop box" from which it was subsequently taken for laboratory analysis. Defendant's second claim is that the person who took the kit from the examining room to the drop box was not called to testify. This claim overlooks the fact that the physician identified the specimens at trial as the specimens taken from the victim.

The testimony distinguishes this case from *Apodaca v. Baca,* 73 N.M. 104, 385 P.2d 963 (1963) on which defendant relies. Under the evidence, the exhibit was admissible under each of the two grounds of admissibility discussed in *State v. Chavez,* 84 N.M. 760, 508 P.2d 30 (Ct.App.1973)—visual identification and chain of custody. We add that defendant could not have been prejudiced even if the exhibit were improperly admitted. The reason is that the results of the analysis of the specimens in the rape kit were cumulative of the physician's testimony as to the results of her examination of the specimens prior to placing the specimens in the rape kit.

### (b) Asserted Improper Argument by the Prosecutor

■ The asserted improper argument came during the final closing argument of the prosecutor. The claim is that this argument was an improper comment on defendant's failure to testify. There are three contentions.

The first contention involves the prosecutor's comment concerning the "demeanor of defendant" and the demeanor of his family as they testified. This was not an improper comment concerning defendant's failure to testify because, during the trial, the defense had defendant exhibit two scars to the jury.

The second contention involves several references by the prosecutor that the victim's testimony was uncontradicted. Defendant recognizes that *State v. Aguirre,* 84 N.M. 376, 503 P.2d 1154 (1972) held that a reference to the victim's uncontradicted testimony was not a comment on defendant's failure to testify. Defendant contends, however, that the repeated references to uncontradicted testimony amounted to improper comment by the prosecutor. In the circumstances of this case, we disagree. Defense counsel had argued that there was not much a defendant could do to defend himself from the charge, that the jury must "balance credibility" and decide whether the victim told the truth, that the accusation by the victim was false, that there were no witnesses to the crime "except the two". The defense argument emphasized alleged discrepancies in the victim's testimony and emphasized the alibi defense. In light of the defense argument, the prosecutor's emphasis on uncontradicted testimony of the victim was an invited response. See *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.) decided February 7, 1978.

The third contention involves the prosecutor's remark that witnesses called by the defense did not deny that the rape had occurred. This was a fair comment on the alibi defense that involved time discrepancies, the concern of the victim's husband to arrange bail for his brother, and the inference from the husband's testimony that the victim would not make a false accusation.

The trial court had instructed the jury, in accordance with U.J.I. Crim. 40.31, not to draw any inference of guilt from the fact that defendant did not testify. The Use Note for this instruction states that it "must not" be given if defendant objects. There is no claim that the instruction was improperly given. The arguments of defense counsel and the prosecutor must be considered in the light of this instruction. The trial court did not err in denying the mistrial motion based on the prosecutor's comments. See *State v. Dominguez,* 91 N.M. 296, 573 P.2d 230 (Ct.App.1977).

The judgment and sentence are affirmed. IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.